In re INLAND SHOE MANUFACTURING COMPANY, INC., Debtor.

Curtis L. MANN, Trustee, Plaintiff,

v.

MICHAEL INDUSTRIES, INC., Jeffrey K. Endervelt and Inland Shoe Manufacturing Company, Inc., Defendants.

Bankruptcy No. 83–00307(SE).
Adv. No. 84–0057(SE).

United States Bankruptcy Court, E.D. Missouri, E.D.

Aug. 24, 1988.

Curtis L. Mann, Clayton, Mo., Trustee.

David B. Freyman, Clayton, Mo., Stephen F. Harmon, New York City, for defendants.

## MEMORANDUM OPINION

DAVID P. McDONALD, Bankruptcy Judge.

Curtis L. Mann, Trustee, filed this adversary complaint in the Eastern District of Missouri, which is the same district where the involuntary petition in bankruptcy was filed against the Debtor, Inland Shoe Manufacturing Company, Inc. ("Inland"). Subsequently, Defendants Michael Industries, Inc. ("Michael") and Jeffrey K. Endervelt filed their Motion To Change Venue, Dismiss And Stay Discovery. The Defendants do not assert that venue is improper; however, they seek to transfer venue of this

adversary complaint to the United States Bankruptcy Court for the Southern District of New York, pursuant to Bankruptcy Rule 7087. It is the Defendants' position that such a transfer will render an easier, more expeditious and less expensive trial.

## VENUE

■ The threshold question raised by the Trustee is whether or not a bankruptcy judge has the authority to transfer venue of an adversary complaint to another district. The Trustee argues that "Neither the statute nor the [Bankruptcy] rule empower the Bankruptcy Court to transfer venue of this adversary proceeding, and, in fact, this Court has no power to do so." I disagree.

Title 28, U.S.C. § 1412 became effective on July 10, 1984 and provides:

A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties.

Although Section 1412 would appear to restrict the authority to the district court for transferring cases, 28 U.S.C. § 157(a) expands the scope of § 1412 to permit bankruptcy judges to hear motions to change venue, where the district court, by its general order of reference, refers all bankruptcy matters to bankruptcy judges for that district. On August 31, 1984, the District Court for the Eastern District of Missouri entered the following Order:

IT IS FURTHER ORDERED that bankruptcy matters are hereby referred to the bankruptcy judges of this district pursuant to the provisions of 28 U.S.C. § 157 and the new Local Rule 27 enacted on this date.

The Defendants' Motion To Change Venue And To Dismiss are "core proceedings" pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). See *In re Oceanquest Feeder Service, Inc.*, 56 B.R. 715 (Bkrtcy.D.Conn.1986). Accordingly, the District Court, by its general order of reference, referred all bankruptcy matters to the bankruptcy judges of this district and I am, therefore, authorized to enter orders dealing with dismissals and change of venue. Since this is a core proceeding, Section 157 does not require the submission of proposed findings of fact and conclusions of law to the District Court. See *Collier Bankruptcy Practice Guide*, ¶ 17.14 at 17–17; *In re Leonard*, 55 B.R. 106 (Bkrtcy.D.D.C.1985).

Title 28 U.S.C. § 1473 and Bankruptcy Rule 5005(a) contemplate that adversary proceedings will be filed in the home court, with specified exceptions. *Norton Bankruptcy Law and Practice, Bankruptcy Rules*, Rule 7087, Editors' Comment (1983), page 708, (1987–1988 Edition). In the instant case, the venue is proper. Thus, a transfer of this adversary to another district can only be granted if venue in the other district is more appropriate. As previously noted, the standard is codified in 28 U.S.C. § 1412 which authorizes transfer "in the interest of justice or for the convenience of the parties."

■ The Defendants recognize that the decision to grant or deny a change of venue is in the discretion of this Court. See *In re Thomasson*, 60 B.R. 629 (Bkrtcy.M.D.Tenn 1986); *In re Butcher*, 46 B.R. 109, at 112 (Bkrtcy.N.D.Ga.1985). It is well established that the moving party has the burden to prove by a preponderance of the evidence that the transfer of an adversary is appropriate under Section 1412. See *In re Whilden*, 67 B.R. 40, at 42 (Bkrtcy.M.D. Fla.1986). The movants have failed to meet this burden.

In an effort to balance the inevitable inconveniences and hardships which normally exist between the parties in a change of venue motion, various courts have established several factors which may be considered:

(1) the proximity of creditors to the court;

(2) the proximity of the debtor to the court;

(3) the proximity of necessary witnesses;

(4) the location of assets;

(5) the economic administration of the estate;

(6) relative advantages and obstacles to a fair trial;

(7) economic harm to a debtor; and

(8) inability of a party to defend in the new forum.

See *Matter of Whilden,* 67 B.R. 40 (Bkrtcy.M.D.Fla.1986); *In re Thomasson, supra,* 60 B.R. at 632; *In re Butcher, supra,* 46 B.R. at 112.

The Trustee concedes and the Court recognizes that most of the Defendants' witnesses are located in or around New York City. Although this is a factor to be considered, it is not dispositive of the change of venue issue. Apparently, the Trustee has not completed his discovery and, therefore, is uncertain as to the exact number and identity of his witnesses; however, he assures the Court that due to the nature of the case and the location of the Debtor (Stoddard County, Missouri) it is reasonable to assume the Trustee's witnesses will come from the St. Louis area.

The Defendants further argue that if their motion is not granted, they will be subject to the expense of shipping fifteen legal size file cabinets to St. Louis. In their legal memoranda of law, the Defendants insist the contents of these file cabinets contain the documents necessary to litigate the pending adversary:

> "Nearly all, if not all, of the corporate and financial records of Michael are located in Michael's New York offices. The records available in New York also include all legal and other documents of Michael's subsidiaries and Endervelt. Indeed, these records, as set forth in Endervelt's accompanying affidavit (¶ 3(a)), comprise approximately fifteen (15) legal cabinets. To be sure, it is indeed most probable that the trustee does not have in his possession any appreciable amount of documentary evidence." Cite Defendants' Memorandum Of Law In Support Of Their Motion To Dismiss The Complaint at page 10–11.

The Debtor, Inland Shoe Manufacturing Company, Inc., was one of Michael's subsidiaries. It is also interesting to note that on page 25 of said Defendants' Memorandum the Defendants state:

> "Plaintiff's inability to set forth with any degree of certainty the transactions complained of or to identify properly pleaded fiduciary relationships that have been violated strongly suggests that the plea for an accounting is simply a pretext for rummaging through *the books and records of Michael and Inland* in the vain hope that some basis for its claims will be discovered. (Emphasis added)

The Trustee seized upon the reference to the books and records of the Debtor, Inland, to argue "... that the very documents which support Defendants' claim to better access of proof being in the Southern District of New York are documents which do *not* rightfully belong in the custody of Defendants. This is because they are the Debtor's records and as such belong in the custody of the Trustee. 11 U.S.C. § 542." In affidavits of Defendant Jeffrey K. Endervelt and subsequent Defendants' briefs, the claim is made that the Defendants have copies and not the records of the Debtor. The conflicts that exist between Endervelt's affidavits and the statements found in the Defendants' Memorandum Of Law In Support Of Their Motion To Dismiss The Complaint, pages 10–11:

> "The records available in New York also include all legal and other documents of Michael's subsidiaries.... To be sure, it is indeed most probable that the trustee does not have in his possession any appreciable amount of documentary evidence."

indicates that some of the documents in the fifteen file cabinets are the property of the Debtor. In fact, the Trustee is correct that those documents which are the property of Inland and held by the Defendants should be turned over to the Trustee and shipped to St. Louis, thus reducing the volume of documents in New York. The balance of the documents can be inspected by the Trustee in New York and if he needs them for trial, he can make the necessary copies. Cooperation, proper trial preparation, and stipulations between the parties will minimize the remaining burden, if any, of proceeding with this trial in St. Louis.

If this adversary were transferred to New York, it would place an extreme burden on the economic administration of this

estate. The Trustee has limited funds to pursue this litigation. If he were required to try the case in New York, the cost of east coast legal fees, hotels, food and transportation would be prohibitive. The economic harm may even bring an end to this adversary not based on the merits of the litigation, but simply on the lack of funds. The Trustee and the Debtor's creditors are entitled to their day in court.

As previously noted, the Defendants have the burden of establishing by a preponderance of evidence that the requested venue transfer is appropriate under 28 U.S.C. § 1412. They simply have not met their burden. The relative inconveniences or hardship that would befall the Plaintiff if the venue were changed is far greater than the hardship the Defendants face in denying the request for a transfer. Considering the relative inconveniences, hardship and prejudices to the parties, I find that in the interest of justice and for the convenience of the parties, the Defendants' Motion To Change Venue must be denied.

▪ The Defendants' next assertion is the Plaintiff's Amended Complaint should be dismissed for failure to state a cause of action. They filed voluminous briefs in support of this motion. Rule 7008 of the Rules of Bankruptcy Procedure provides that Rule 8 of the Federal Rules of Civil Procedure applies in bankruptcy adversary proceedings. Rule 8 of the Federal Rules of Civil Procedure requires notice pleading in complaint. "Notice pleading means that a complaint need only give the defendant fair notice of what plaintiff's claim is and grounds upon which it rests." *Quality Foods de Central America S.A. v. Latin America Agribusiness Development Corporation S.A.*, 711 F.2d 989 (11th Cir.1983). The Defendants allege that the Plaintiff's Amended Complaint fails to provide the necessary clarity and factual basis for a proper pleading. Factual pleading is not required under the Federal Rules of Civil Procedure. A complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim which

would entitle him to relief. *Hungate v. United States*, 626 F.2d 60 (8th Cir.1980). This Court finds that the Amended Complaint filed by the Trustee meets the pleading requirements of the Federal Rules of Civil Procedure.

The Defendants next attack each count individually for a number of reasons. The Court's findings with regard to the sufficiency of each count individually are as follows:

## COUNT I

▪ The Plaintiff alleges in Count I that Michael used Inland as an alter ego of itself so that they were not two separate corporations. The issue that must be resolved is whether a Chapter 7 bankruptcy trustee has standing to assert on behalf of the debtor corporation and/or the debtor corporation's creditors an alter ego action against Inland. The Supreme Court in *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972) held that a Chapter 7 trustee has no standing on his own to bring an alter ego action on behalf of the debtor corporation's creditors. After *Caplin* was decided, Congress changed the bankruptcy laws with the enactment of the Bankruptcy Code. The Eighth Circuit discussed those changes and concluded *Caplin* was still controlling. *See In re Ozark Restaurant Equipment Co., Inc.*, 816 F.2d 1222 (8th Cir.1987). That is, the Trustee does not have standing to bring an alter ego suit against a corporation on behalf of the creditors. However, it is clear the Trustee can pursue any causes of action belonging to the Debtor at the commencement of the case. The court held in *Ozark Restaurant, supra*: "Where the applicable state law makes such obligations or liabilities run to the corporate creditors personally, rather than to the corporation, such rights of action are not assets of the estate under section 541(a) that are enforceable by the trustee.... [G]enerally, the corporate veil is never pierced for the benefit of the corporation or its stockholders." *In re Ozark Restaurant Equipment Co., Inc., supra;* 4 *Collier On Bankruptcy*, ¶ 541.10[8], at

986

541–69 to 541–70 (15th Ed.1986). The Missouri Supreme Court has stated "the courts will ignore separate corporate entities in order to defeat a fraud, wrong or injustice, at least where the rights of third persons are concerned." *Osler v. Joplin Life Insurance Company*, 164 S.W.2d 295 (Mo. 1942). Therefore, because the obligations and liabilities of an action to pierce the corporate veil in Missouri do not run to the corporation or its stockholders generally, but to third parties, Count I must be dismissed for lack of standing.

## COUNT II

■ Count II basically alleges a breach of fiduciary duty by Michael to Inland. The Defendants cite *In re REA Express, Inc.*, 412 F.Supp. 1239 (E.D.Pa.1976) and *Aeronca, Inc. v. StyleCrafters, Inc.*, 546 F.2d 1094 (4th Cir.1976) in support of their argument that there is not a fiduciary duty owed to a wholly-owned subsidiary by its parent corporation. Such an all inclusive statement is simply not an accurate statement of the law. "The nature and extent of the fiduciary duty of a parent corporation to its subsidiary, or to the minority stockholders of its subsidiary, generally depends upon the facts and circumstances in each case, and the basic test to be applied is one of fairness." Fletcher Cyclopedia, Corporations, Permanent Edition, § 852, page 239 (footnote omitted). In *Jump v. Manchester Life and Casualty Management Corp.*, 579 F.2d 449 (8th Cir.1978) the Court made reference to the fiduciary duty owed by a parent· to its subsidiary under Missouri law, while discussing other issues in the *Jump* case. Accordingly, the trustee may pursue, upon behalf of the debtor, claims based on a theory of a fiduciary duty owed by the defendants to the debtor. Therefore, Count II will not be dismissed.

## COUNT III

Count III alleges a breach of fiduciary duty by Endervelt as director of Inland. It is well settled that a Director of a corporation occupies a fiduciary relationship to the corporation and its shareholders, and may not profit personally by virtue thereof at expense of the corporation or stockholders. *Ramacciotti v. Joe Simpkins, Inc.*, 427 S.W.2d 425 (Mo.1968). The Defendants argue that in the case of a wholly-owned corporation, the stockholders are the same for both parent and subsidiary. They assert where the shareholders are the same for both corporations no one to whom a duty is owed is hurt if the parent corporation prospers at the expense of the subsidiary. *Ramacciotti* even states "stockholders suits on behalf of a corporation are entertained only in equity ... and equity has always demanded certain minimum standards of those who seek relief in its forum. Thus, it is the general rule that a shareholder who, with knowledge of the material facts, has consented or acquiesced in the transaction of which he complains ordinarily cannot attack the transaction on behalf of the corporation." *Ramacciotti* at 432. The shareholders of a wholly-owned corporation can be said to have acquiesced or consented to the transactions complained of by the trustee where they have profited or accepted benefits from the transactions. Thus, the trustee may not complain of the transactions on behalf of the shareholders.

■ However, *Ramacciotti* indicates that the corporation and its shareholders are separate entities to whom a director owes a fiduciary duty. *Ramacciotti* at 431. Further, the court in *Forinash v. Daugherty*, 697 S.W.2d 294 (Mo.Ct.App. 1985) stated "As a matter of general law, it may be said that the officers and directors of a company owe fiduciary duties to their corporation and to the other shareholders." Thus the director owes a duty to the corporation as a separate entity from the shareholders. The trustee may pursue claims on behalf of the corporation. Therefore, Count III will not be dismissed.

## COUNT IV

Count IV is based on recovery of an alleged bond owing to Inland from Michael. This Court finds that Count IV has met the pleading requirements of Rule 8 and shall not be dismissed.

## COUNT V

Count V is a complaint to set aside a fraudulent conveyance. The Court finds that Count V has met the pleading requirements of Rule 8 and shall not be dismissed.

## COUNT VI

The Plaintiff alleges in Count VI that the Defendants Michael and Endervelt conducted or participated in the conduct of Inland's affairs through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1)(D) and the same were fraudulent and were effected through the use of the United States Postal Service, all in contravention of 18 U.S.C. § 1341. Specifically, Plaintiffs allege the following corrupting acts:

10. During the period from 1978 through 1983 Michael and Defendant Endervelt conducted or participated in the conduct of Inland's affairs through a pattern of racketeering activity, including but not limited to the following offenses involving fraud:

a) Defendants authorized and had Inland pay Michael excessive management fees as more particularly set forth in Count I of this Complaint;

b) Defendants caused the merger of Inland with wholly owned subsidiaries of Michael for grossly inadequate consideration, as more particularly set forth in Count I of this Complaint;

c) Defendants authorized Inland's continuing extension of credit to Michael at a time when Inland could not meet its own debts and obligations, including but not limited to Inland's debt on the land and building from which Inland conducted its business, all as more particularly set forth in Count I of this Complaint;

d) On December 3, 1980 Defendants caused Inland to reduce by $1,017,945.00 a Receivable admittedly due and owing from Michael to Inland, which agreement Defendants caused Inland to enter for no or wholly inadequate consideration.

The Defendants move to dismiss Count VI for the following reasons:

1. the Complaint fails to set forth any of the statutorily defined predicate acts upon which a RICO claim must be based;
2. the Complaint seeks damages resulting only from the alleged predicate acts themselves and not damages resulting from a distinctive RICO violation; and
3. the Complaint wholly fails to plead the essential elements of a mail fraud offense.

■ In order to establish a RICO cause of action, Plaintiff must prove the existence of four elements:

(1) conduct
(2) of an enterprise
(3) through a pattern
(4) of racketeering activity

see *H. J. Inc. v. Northwestern Bell Telephone Co.*, 648 F.Supp 419 (D.Minn.1986), affirmed, 829 F.2d 648 (8th Cir.1987); *Sedima S.P.R.L. v. Smrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). In order to prevail in a RICO civil case, the Plaintiff must prove that the Defendants engaged in a "pattern" of racketeering activity. The Supreme Court's *Sedima* decision provides the following guide lines:

(1) two isolated acts of racketeering activity do not constitute a pattern;
(2) it is the factors of continuity plus relationship which combine to produce a pattern;
(3) the "pattern" element of the statute was designed to limit RICO's application to planned, ongoing, continuing crime as opposed to sporadic, unrelated, isolated criminal episodes.

See *Sedima*, 105 S.Ct. at 3285 n. 14.

■ The Eighth Circuit has defined the meaning of "pattern" as used in civil RICO context in several recent cases, *H. J. Inc. v. Northwestern Bell Telephone Co.*, 829 F.2d 648 (8th Cir.1987); *Superior Oil Co. v. Fulmer*, 785 F.2d 252 (8th Cir.1986) and *Holmberg v. Morrisette*, 800 F.2d 205 (8th Cir.1986). In essence, the Court has held that in order to establish a "pattern" of racketeering activity Plaintiff must allege and prove (1) relationship and (2) continuity. The relationship prong is satisfied by proving several related acts in furtherance

of a single criminal scheme. The continuity prong is satisfied by proving that the Defendants committed the same or similar racketeering activities in the past or are engaged in other criminal activities elsewhere.

■ When you apply these standards to Count VI in the instant case, it is clear that the Plaintiff has not alleged conduct which would satisfy the continuity prong. The Defendants were not accused of having committed the same or similar racketeering activities in the past or are engaged in other criminal activities elsewhere. Since the Plaintiff has not alleged conduct sufficient to prove "continuity", it has failed to allege conduct needed to establish a "pattern of racketeering", as required by the Supreme Court's *Sedima* decision, *supra*. Accordingly, Plaintiff's RICO claim (Count VI) must be dismissed.[1]

### COUNT VII

Count VII is a preference complaint. The Court finds that Count VII has met the pleading requirements of Rule 8 and will not be dismissed.

### CONCLUSION

For the foregoing reasons, Counts I and VI shall be stricken. Counts II, III, IV, V, and VII shall stand and the Defendants' Motion To Transfer Venue shall be DENIED. An Order consistent with this Opinion shall be entered.

---

**1.** The second sentence of 28 U.S.C. § 157(d) provides: "The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." Since no one filed a timely motion, the Court finds the right to withdraw reference has been waived. *See* 1 *Collier On Bankruptcy* ¶ 3.01, at 3–65 to 3–66 (15th Ed.1986).