Elmer SWALLOWS, Plaintiff–
Respondent,

v.

Verlin D. HOLDEN, Tim Holden, Julie Holden, Celeste Holden, and Dexter Pallet Company, Inc., a corporation, Defendants,

Verlin D. Holden, Defendant–
Appellant.

No. 17056.

Missouri Court of Appeals,
Southern District,
Division One.

July 9, 1991.

Donald Rhodes, Bloomfield, for plaintiff-respondent.

Samuel P. Spain, Spain, Merrell & Miller, Poplar Bluff, for defendant-appellant.

MAUS, Presiding Judge.

Plaintiff Elmer Swallows secured a Workers' Compensation award against Dexter Pallet Company, Inc. (Dexter) for $15,287.62. He reduced this award to judgment in the circuit court. Dexter had transferred its assets to Verlin D. Holden (appellant). In this action against Dexter, Verlin D. Holden, Tim Holden, Julie Holden and Celeste Holden, the plaintiff attacks that conveyance as fraudulent. The trial court awarded plaintiff a judgment for the compensation claim, plus interest, in the total amount of $24,326.84 against Dexter and Verlin D. Holden. He appeals.

The case was submitted to the trial court upon an Agreed Statement of Facts, certain requests for admissions and a portion of the deposition of appellant. The following is a condensation of the facts sufficient for the resolution of the issue on appeal. Dexter was organized in 1981. During its corporate existence, its directors, officers and shareholders were Verlin D. Holden, his wife Celeste Holden, his son Tim Holden, and Julie Holden. All of the Holdens were employed by Dexter. The assets of Dexter consisted of equipment used in making pallets. A bank valued that equipment at $40,000.00. Dexter's business was conducted in a dairy barn on the farm of appellant. The barn had been converted for use in the pallet business.

Plaintiff was injured while working for Dexter, which was under the Workers' Compensation Law, but was neither insured nor self-insured. On November 29, 1983, plaintiff was granted a lump sum award against Dexter in the amount of $15,287.62, with interest at the rate of 8% per annum.

In October 1983, Dexter owed $160,-000.00 to the Puxico State Bank. The indebtedness was secured by the assets of Dexter and the farm of appellant. In October 1983, appellant borrowed $187,000.00 from the First State Bank of Dexter. "From that sum One Hundred Sixty Thousand Dollars plus interest was used to retire the indebtedness of Dexter Pallet Company, Inc." At that time, the assets of Dexter were transferred to appellant, individually. Appellant knew that plaintiff was prosecuting his claim under the Workers' Compensation Law against Dexter. In addition, it was stipulated "[a]ll Defendants participated in and knew about the convey-

ance of the assets of Dexter Pallet Company, Inc., to Verlin Holden."

After the assets of Dexter were transferred to appellant, they remained in his converted barn. After a short interval, Verlin D. Holden, individually, resumed the pallet business using that equipment in the converted barn. He did business as "Holden Pallet and Woodworking Company". He continued to do business with two of the principal customers of Dexter. It was also stipulated that "[a]ll of the actions, affairs and operations of Defendant, Dexter Pallet Company, Inc., were controlled and managed by Defendants Verlin Holden, Celeste Holden, Tim Holden and Julie Holden, with said corporation employing Defendants, Verlin Holden, Celeste Holden and Tim Holden; and that all of the actions, affairs and operations of Holden Pallet and Woodworking Company were controlled and managed by Defendant, Verlin Holden with said business employing Defendants, Verlin Holden, Celeste Holden and Tim Holden."

■ As stated, the trial court rendered judgment for the plaintiff against Dexter and appellant in the amount of $24,326.84. Neither party requested a statement of the grounds for the decision. Rule 73.01(a)(2). The trial court made no such statement. "Nevertheless, this court must affirm the trial court's judgment if it is correct under any reasonable theory." *Jensen v. Borton*, 734 S.W.2d 580, 584 (Mo.App.1987).

Plaintiff's petition was in two counts. By the first count, he alleged the transfer was fraudulent and prayed that it be set aside. By the second count, he alleged the individual defendants had appropriated the assets to their personal use and prayed for an accounting and general relief. The briefs of the parties in the trial court submitted the issue of the appellant's personal liability. See 37 Am.Jur.2d, Fraudulent Conveyances, § 124. The evidence submitted by stipulation centered on that issue. The pleadings may be considered amended to present that issue. *Mahan v. Missouri Pacific R. Co.*, 760 S.W.2d 510 (Mo.App.1988). The trial court resolved the issue presented in the plaintiff's favor

and rendered judgment on that basis. By their briefs in this Court, the plaintiff and appellant acknowledge that the judgment of the trial court is a complete adjudication of all issues between the parties presented by the amended pleadings. This Court will accept that acknowledgement.

■ The appellant's first point on appeal is that the trial court erred "in that the evidence was not sufficient to sustain a finding that the purpose of the transfer of assets from the corporation to Verlin Holden was to hinder, delay, or defraud creditors because the transfer was for valid and sufficient consideration, the corporation was already insolvent before the transfer, and the plaintiff did not have any rights to these assets because they were encumbered beyond their value." The essence of that point, as developed by argument, is that the evidence is insufficient to support a determination that the conveyance of the assets to appellant was fraudulent.

■ The appellant acknowledges the following standard for measuring the sufficiency of the evidence to establish a conveyance was fraudulent.

"Because the intent of the transferor is difficult to establish by direct proof, the intent must be determined by the facts and circumstances surrounding the transactions. *Community Fed. Savings & Loan Ass'n v. Boyer*, 710 S.W.2d 332, 334 (Mo.App.1986). As a result, courts have recognized the following 'badges of fraud': (1) a conveyance to a spouse or near relative; (2) inadequacy of consideration; (3) transactions different from the usual method of transacting business; (4) transfers in anticipation of suit or execution; (5) retention of possession by the debtor; (6) the transfer of all or nearly all of the debtor's property; (7) insolvency caused by the transfer; and (8) failure to produce rebutting evidence when circumstances surrounding the transfer are suspicious. Id. In addition to these enumerated badges of fraud, another recognized badge of fraud is a transfer by a debtor corporation of its property to a second corporation where both are controlled by the same person.

*Standard Leasing Corp. v. Missouri Rock Co.,* 693 S.W.2d 232, 236 (Mo.App. 1985). Although none of the badges of fraud existing alone establishes fraud, a concurrence of several of the badges raises a presumption of fraud. *Cohoon v. Cohoon,* 627 S.W.2d 304, 307 (Mo.App. 1981)." *South Side Nat. v. Winfield Fin. Serv.,* 783 S.W.2d 140, 143–144 (Mo. App.1989).

Nonetheless, he argues, the evidence does not meet that standard. First, he contends Dexter received adequate consideration for the assets as the appellant paid the indebtedness in the amount of $160,000.00. This argument is not persuasive. The term "consideration", as used in that standard, involves the concept of quid pro quo. That is, the grantor receives something of value for the assets conveyed. 19 C.J.S. Corporations § 748. Further, at least to the extent of the value of his farm, the appellant was, irrespective of such conveyance, obligated to pay the indebtedness of Dexter. 19 C.J.S. Corporations § 749. He paid that indebtedness, not as consideration for the transfer, but, as he said, for the purpose of attempting to save his farm.

Appellant also argues the standard is not met because Dexter was insolvent both before and after the conveyance. Again, appellant ignores his obligation to pay the indebtedness of Dexter. Before the conveyance, Dexter had physical assets of the value of at least $40,000.00 and appellant's obligation to pay its indebtedness. After the conveyance, it had nothing. Also see *Telefest, Inc. v. VU–TV, Inc.,* 591 F.Supp. 1368 (D.C.N.J.1984).

It is significant that appellant did not terminate the pallet business but continued that business with the use of the equipment. He carried on that business without moving its location and kept the principal customers of Dexter. The conduct of the appellant in this case is much like the conduct of Scott in *South Side Nat. v. Winfield Fin. Serv.,* supra, at 144. In that case, the court observed:

"The transfers in question were equivalent to Scott's juggling the properties from himself to a corporation and from one corporation to another corporation merely to avoid obligations to a third party. In actuality, Scott was the alter ego of the corporations and the corporations were a subterfuge. Because Scott was the alter ego of the two corporations, he was effectively transferring the properties in question to himself."

That principle is applicable to this case. There was evidence from which the trial court could reasonably find the fraudulent purpose of the transfer of the assets was to permit the pallet business to be carried on free from the claim of the plaintiff. Also see *K.C. Roofing Center v. On Top Roofing,* 807 S.W.2d 545 (Mo.App.1991). The first point is denied.

■ The appellant's second point is that the trial court erred because the assets of the corporation were encumbered beyond their worth and the plaintiff could not have reached them had they not been conveyed. This point ignores the basis for the personal liability of the appellant. That basis is that the conveyance was to avoid paying the plaintiff; the appellant participated in that conveyance as grantor and grantee; and he appropriated those assets for his own use. "Property fraudulently transferred to one having knowledge of the irregularity of the transfer remains liable for the payment of the corporation's debts, as does the transferee to the extent of the value of the assets transferred...." 19 C.J.S. Corporations § 749. The second point has no merit.

The judgment of the trial court was supported by the evidence and it did not erroneously declare or apply the law, *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976), and is affirmed.

PREWITT and CROW, JJ., concur.