**In re MAR–KAY PLASTICS, INC., Debtor.**

**Mar–Kay Plastics, Inc., Plaintiff,**

**v.**

**Reid Plastics, Inc., et al., Defendants.**

**Bankruptcy No. 97–40170–1–11.**
**Adversary No. 99–4014–1.**

United States Bankruptcy Court, W.D. Missouri.

June 3, 1999.

474

Scott J. Goldstein, Kansas City, MO, for plaintiff.

Michael F. Kerr, Los Angeles, CA, Jennifer L. Brockett, Los Angeles, CA, Neil L. Johnson, Kansas City, MO, for defendants.

### *MEMORANDUM OPINION AND ORDER*

JERRY W. VENTERS, Bankruptcy Judge. :

Mar–Kay Plastics, Inc., the Debtor in these Chapter 11 proceedings, has filed a multi-count Complaint seeking to recover a $100,000.00 earnest money deposit plus monetary damages in connection with a failed transaction involving the sale of the stock of Mar–Kay Enterprises, Inc., the parent company and sole shareholder of the Debtor. The Complaint presents the unusual issue of whether the Debtor may, under an alter ego or other theory, pursue recovery of the $100,000.00 on behalf of its parent company and sole shareholder.

This matter is before the Court on a Motion to Dismiss pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, filed by the Defendant, Reid Plastics, Inc. For the reasons discussed below, the Court will sustain the Motion to Dismiss.

This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334. This is a "core proceeding" brought pursuant to 28 U.S.C. § 157(b)(2)(E), (F), (H) and (O). This Memorandum Opinion and Order constitutes the Court's findings of fact and conclusions of law. Bankruptcy Rule 7052.

### FACTS

Though this Adversary Proceeding is in its infancy, the facts are somewhat unusual and will be set out in some detail for a full understanding of the issues presented. Since this matter comes before the Court on a Motion to Dismiss filed pursuant to Rule 12(b)(5) and (6), Fed.R.Civ.P., made applicable to this proceeding by Rule 7012, Fed.R.Bankr.P., the facts pleaded by the Plaintiff (the Debtor) are taken as true and all reasonable inferences are drawn in favor of the Plaintiff. *Bloor v. Carro, Spanbock, Londin, Rodman and Fass,* 754 F.2d 57, 61 (2nd Cir.1985).

Mar–Kay Plastics, Inc., a Missouri corporation, ("Debtor" or "Mar–Kay Plastics") is wholly owned by Mar–Kay Enterprises, Inc., also a Missouri corporation ("Mar–Kay Enterprises"). The Debtor alleges that Mar–Kay Enterprises was the Debtor's alter ego in the dealings with Reid Plastics, Inc., at issue here because Mar–Kay Enterprises was the sole parent of the Debtor, was a corporate "shell" with no assets other than the stock of the Debtor company, and had an interlocking board of directors with the Debtor.

The Debtor has named as Defendants two parties known as Reid Plastics, Inc. The first Reid Plastics, Inc., was a California corporation which was merged into Reid Intermediate Holdings, Inc., a Delaware corporation, in October 1997. Reid Intermediate Holdings, Inc., then changed its name to Reid Plastics, Inc., in December 1997, just over a year before the Debtor filed its Complaint. For purposes of this Memorandum Opinion and Order, the first Reid Plastics, Inc., will be referred to as "Reid California" and the second Reid

Plastics, Inc., will be referred to as "Reid Delaware." The Motion to Dismiss was filed by Reid Delaware, and both parties' legal memorandums reflect an understanding that the only functioning and viable defendant is Reid Delaware. The Court will also proceed on that assumption.

On October 14, 1996, Mar–Kay Enterprises and Reid California entered into a Letter of Intent which set out a proposal by Reid California to purchase all of the issued and outstanding stock of Mar–Kay Enterprises for $1,174,710.00 (based on $1.00 per share for 1,174,710 then-outstanding shares). The Letter of Intent specified that the closing of the transaction was conditioned on several things, among them being: (1) the "negotiation and execution of a definitive purchase agreement ... in form and substance reasonably satisfactory to all parties," on or before December 7, 1996; (2) closing of the contemplated transactions by January 6, 1997; (3) the obtaining of all necessary and material governmental, regulatory, licensing, and third-party consents, permits, and approvals; and (4) no increase (with two specified exceptions) in the amount of the aggregate indebtedness of Mar–Kay Enterprises over the amount of debt as of August 31, 1996. If everything came together as the parties anticipated, on the closing date Reid California would loan or otherwise provide sufficient money to enable Mar–Kay Plastics, the subsidiary of Mar–Kay Enterprises, to pay off an indebtedness which Mar–Kay Plastics owed to Mercantile Business Credit, Inc., under a 1993 loan and security agreement.

In the Letter of Intent, Reid California and Mar–Kay Enterprises agreed that, until December 7, 1996, they would use their best efforts to negotiate a definitive purchase agreement and all other agreements contemplated by the Letter of Intent, and that Mar–Kay Enterprises and its officers would not try to sell the stock of the company to anyone else in the interim. Reid California deposited $100,000.00 with Mercantile Bank of Kansas City, N.A., as earnest money, and the parties and the bank entered into an Escrow Agreement with respect to the funds. The Escrow Agreement provided that the $100,000.00 would be applied toward the purchase price for the stock if the deal was closed, but that if the deal failed to close, the money would go either to Reid California or Mar–Kay Enterprises, depending on the happening of specified events (which are not material here).

Mar–Kay Plastics, the Debtor, was not a party to either the Letter of Intent or the Escrow Agreement.

According to the Complaint, the Debtor [1] entered into exclusive negotiations with Reid Plastics and directed its officers, bankers, and others to cease any talks or solicitations for other bids or offers for the company. However, a definitive purchase agreement was not reached by the specified deadline. In January 1997, the Defendant contacted the Debtor and represented that it was ready to consummate a sale and requested that the Debtor come to California to finalize the sale. The Defendant also allegedly represented to the Debtor that the $100,000.00 in earnest money would be available to the Debtor to enable it to purchase resin which it needed to continue to operate its plastics business.

When the Debtor arrived in California to negotiate the final deal, events took an unexpected turn. Reid California required

1. Throughout the Complaint, Mar–Kay Plastics, Inc., and Mar–Kay Enterprises, Inc., are referred to collectively as the "Debtor," and Reid California and Reid Delaware are referred to collectively as "Defendant." It is therefore unclear in many instances in the Complaint exactly which entity is being referenced. The Court suspects that this blurring of distinctions between the corporate entities is intentional, inasmuch as such blurring of distinctions serves to benefit the Plaintiff. Rather than attempt to make any distinctions, the Court will refer to the parties as they are referred to in the Complaint. This choice of language does not, however, mean that the Court accepts the Debtor's contention that it is the alter ego of Mar–Kay Enterprises, Inc.

that the $100,000.00 in escrow be released before negotiations continued. The escrowed funds were released, whereupon the Defendant broke off the negotiations and the sale of stock never took place.

Shortly thereafter, on January 17, 1997, Mar–Kay Plastics filed a voluntary Chapter 11 Petition. Mar–Kay Enterprises, the parent company, has not filed bankruptcy.

As mentioned above, the Debtor filed its Complaint on January 15, 1999, and Reid Delaware, claiming to be the successor to Reid California, filed a Motion to Dismiss, alleging. (1) that Reid Delaware had not been properly served with process and therefore the Complaint should be dismissed pursuant to Rule 12(b)(5), and (2) that the Complaint failed to state a claim on which relief can be granted and therefore should be dismissed pursuant to Rule 12(b)(6).[2] The Court has previously ruled on the Rule 12(b)(5) motion and proper service has been obtained on the Defendant. The Court has considered the parties' memorandums on the Rule 12(b)(6) issues, has heard oral arguments, and is now ready to rule.

## DISCUSSION

### I. Conversion of the Rule 12(b)(6) Motion

█ As a preliminary matter, the Court must determine whether the Motion to Dismiss filed by Reid Delaware is to be treated as a Rule 12(b) motion or whether it should be considered as a Motion for Summary Judgment pursuant to Rule 56, Fed.R.Civ.P., and Rule 7056, Fed. R.Bankr.P.

This issue has arisen because Reid Delaware, in support of its motion to dismiss the Complaint on grounds of insufficient service of process pursuant to Rule 12(b)(5), submitted the affidavit of its chief financial officer and a certified copy of a document from the California Secretary of State's office to show that the Debtor had failed to serve Reid California's or Reid Delaware's then-current registered agent. In response, the Debtor submitted with its legal memorandum certified copies of materials from the California Secretary of State with respect to the service of process issue and also submitted an affidavit from its president (who was also the president of Mar–Kay Enterprises) relating to the development of the Letter of Intent with Reid California and the breakdown of the sales negotiations. Reid Delaware has challenged the Debtor's submission of documentation that goes to the merits of the Debtor's Complaint as opposed to the service of process issue. The Debtor contends that Reid Delaware "opened the door" to the submission of matters outside the pleadings when it submitted an affidavit with its motion to dismiss and that the Court should now consider all of the Debtor's submissions in addition to its pleadings by treating the Rule 12(b)(6) (Bankruptcy Rule 7012) motion as a Rule 56 (Bankruptcy Rule 7056) motion for summary judgment pursuant to Fed.R.Civ.P. 12(b).[3]

---

**2.** Both Federal Rule of Civil Procedure 12(b)(5) and 12(b)(6) are applicable to bankruptcy proceedings pursuant to Bankruptcy Rule 7012.

**3.** The Debtor also claims that the additional material submitted should be considered even if the Court does not convert the motion to dismiss to a motion for summary judgment. In support of this argument, Debtor cites a number of Illinois and Seventh Circuit cases holding that attachments to a complaint which are "consistent" with the complaint do not constitute "matters outside the pleadings" and can be considered in the context of a Rule 12(b)(6) motion. *See Hodges v. National Basketball Assoc.,* 1998 WL 26183 (N.D.Ill. 1998); *Albiero v. City of Kankakee,* 122 F.3d 417 (7th Cir.1997); *Thomason v. Nachtrieb,* 888 F.2d 1202 (7th Cir.1989). The Eighth Circuit's definition of what constitutes "matters outside the pleadings," however, is significantly more restrictive than the Debtor's proposed definition. *See Gibb v. Scott,* 958 F.2d 814, 816 (8th Cir.1992) ("Most courts … view 'matters outside the pleading' as including any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings … We

Federal Rule of Civil Procedure 12(b) provides:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed.R.Civ.P. 12(b)(6).

In this case, Reid Delaware filed a two-part Motion to Dismiss. The first part seeks to have the Complaint dismissed pursuant to Rule 12(b)(5) on grounds of insufficient service of process. That issue has been ruled previously. The second part seeks dismissal pursuant to Rule 12(b)(6) on grounds the Complaint fails to state a cause of action. Reid Delaware has not invoked Rule 56 at any time in its Motion or in its legal memorandums to the Court, and the only matters outside the pleadings submitted by Reid Delaware have been documents relating to the issue of the insufficiency of service of process. Such documents are routinely admitted for the purpose of Rule 12(b)(5) motions. *See Fulton v. Twentieth Century–Fox Film Corp.*, 111 F.Supp. 874 (W.D.Mo.1953) (al-

lowing affidavit in support of Rule 12(b)(5) motion); 5A. WRIGHT AND MILLER, FEDERAL PRACTICE AND PROCEDURE, CIVIL 2d § 1353, p. 283–84 (1990). In contrast, the Debtor has filed with its legal memorandum an affidavit executed by its former president that goes into considerable detail about the sales negotiations with Reid California and the breakdown of those negotiations. It has also submitted a certified copy of a UCC–1 financing statement filed with the Missouri Secretary of State.

■ It would not be appropriate, in the Court's view, to allow the Debtor to convert Reid Delaware's Rule 12(b) Motion to Dismiss into a Rule 56 Motion for Summary Judgment simply by submitting as exhibits to a legal memorandum documents that go to the merits of the Rule 12(b)(6) motion. "A motion to dismiss is not automatically transformed into a motion for summary judgment simply because matters outside the pleadings are filed with, and not expressly rejected by, the district court. If the district court chooses to ignore the supplementary materials and determines the motion under the 12(b)(6) standards, no conversion occurs." *Garita Hotel Limited Partnership, Etc., v. Ponce Federal Bank, F.S.B.*, 958 F.2d 15, 18 (1st Cir.1992).[4] Furthermore, the legal standards for these motions are substantially different,[5] and the parties have not

---

believe this interpretation to be appropriate in light of our prior decisions indicating a 12(b)(6) motion will succeed or fail based upon the allegations contained in the face of the complaint.") (citations omitted). Because the additional materials submitted by the Debtor would provide some substantiation, albeit weak, to its Response to Defendant's *Motion to Dismiss*, they are excluded from the Court's consideration of the present Rule 12(b)(6) motion.

The Court pauses to note that, in light of the existence of on-point, Eighth Circuit decisions, it finds the Debtor's sole reliance on Seventh Circuit cases a bit curious.

**4.** *Accord, Hall v. Bellmon*, 935 F.2d 1106, 1111 n. 4 (10th Cir.1991); *Griffith v. Johnston*, 899 F.2d 1427, 1432–33 n. 2 (5th Cir. 1990), cert. denied, 498 U.S. 1040, 111 S.Ct.

712, 112 L.Ed.2d 701 (1991); *Martin v. Sargent*, 780 F.2d 1334, 1336–37 (8th Cir.1985); *North Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 582 (9th Cir.1983); *Ware v. Associated Milk Producers*, 614 F.2d 413, 414–15 (5th Cir.1980) (per curiam). *But see, Grand Union Co. v. Cord Meyer Dev. Corp.*, 735 F.2d 714, 716–17 (2d Cir.1984) (per curiam) (holding that the presence of affidavits automatically converts a Rule 12(b)(6) motion into motion for summary judgment unless the affidavits are expressly excluded by the district court); *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 392 (6th Cir.1975) (similar).

**5.** "The Rule(12)(b)(6) motion ... must be distinguished from a motion for summary judgment under Rule 56, which goes to the merits of the claim and is designed to test whether

been given any opportunity, reasonable or otherwise, to present all material that would be pertinent to a Rule 56 motion. In fact, counsel for Reid Delaware expressly stated at the time of oral argument (in response to a query by the Court) that the Motion to Dismiss was not intended to be a Motion for Summary Judgment.

For these reasons, the Court will not consider Reid Delaware's Motion to Dismiss as a Rule 56 Motion for Summary Judgment and will disregard the additional materials submitted by the Debtor that go to the merits of the Rule 12(b)(6) motion. The Court will also disregard the additional facts relating to the merits of the Complaint that have been interjected by the Debtor in its legal memorandums.

## II. The Debtor's Complaint

The Debtor filed a Complaint in five counts:

Count I alleges that the transfer of the $100,000.00 earnest money deposit to Reid California was a preferential transfer of property of the Debtor, in violation of 11 U.S.C. § 547.

Count II alleges that the transfer of the $100,000.00 is avoidable as a fraudulent transfer pursuant to 11 U.S.C. § 548.

Count III is a breach of contract claim based on state law. The Debtor claims that it entered into a binding preliminary agreement (the Letter of Intent) with Defendant providing that the Defendant would use its best efforts to negotiate in good faith in an expedited fashion for the purchase of the Debtor and, in exchange, the Debtor would negotiate exclusively with the Defendant and would not solicit other offers for sale of the company. This Count alleges that the $100,000.00 was paid to the Debtor, and that the Debtor released the $100,000.00 to the Defendant in January 1997 because the Defendant required that the money be released before the Defendant would continue with the negotiations. The Debtor alleges that the Defendant, after receiving the $100,-000.00, broke off the negotiations and refused to consummate any deal for the purchase of the Debtor. The Debtor seeks recovery of the $100,000.00 plus additional monetary damages for any diminution in the market value of the Debtor before and after the "lock-up" by the Defendant.

Count IV is based on a theory of promissory estoppel. The Debtor alleges that the Defendant promised to negotiate in good faith, promised to engage in negotiations if the Debtor traveled to California to meet with the Defendant, and promised to continue negotiations if the Debtor released the earnest money. In reliance on the Defendant's promises and as part of their agreement, the Debtor agreed to an exclusivity clause that cut off all present and future negotiations with other prospective purchasers. During the time that all other bidders were locked out and prevented from making any offers for the Debtor, the market value of the Debtor declined substantially. The Debtor claims that it incurred attorney's fees and travel expenses in detrimental reliance on the Defendant's promises. As in the breach of contract count, the Debtor seeks to recover the $100,000.00 earnest money deposit plus additional monetary damages for any diminution in the market value of the Debtor before and after the "lock-up" by the Defendant.

Count V (misnumbered VI by the Debtor) is based on a theory of economic duress. The Debtor claims that the Defendant's demand for release of the earnest money in exchange for continued negotiations was contrary to the Defendant's

there is a genuine issue of material fact. The Rule 12(b)(6) motion ... only tests whether the claim has been adequately stated in the complaint. Thus, on a motion under Rule 12(b)(6), the court's inquiry essentially is limited to the content of the complaint; summary judgment, on the other hand, involves the use of pleadings, depositions, answers to interrogatories, and affidavits." 5A. WRIGHT AND MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 1356, p. 298–99 (1990).

promises and that the Defendant "substantially contributed to the economic pressures that compelled the release of the Earnest Money due to the delays in negotiations with the Defendant and the exclusivity clause with the Defendant." It claims that the Defendant's demand for release of the earnest money was wrongful and deprived the Debtor of the ability to make a free decision. The Debtor seeks an order rescinding the transfer of the earnest money, return of the earnest money, and an additional $100,000.00 in damages.

In asserting these claims, the Debtor seems to place its primary reliance on the theory that Mar–Kay Enterprises, the sole shareholder of Mar–Kay Plastics and its parent company, was the alter ego of Mar–Kay Plastics, and therefore the claims and property of Mar–Kay Enterprises are the claims and property of Mar–Kay Plastics, the Debtor. Reid Delaware has characterized the Debtor's theory as either a "reverse alter ego" or "reverse piercing" theory, and has invited the Court to venture into the thorny thickets of that theory. The Court will decline that invitation because, in the Court's view, the facts as pleaded by the Debtor do not support an alter ego or reverse piercing claim and, more importantly, under Missouri law only third party creditors (judgment or otherwise) have standing to pursue an alter ego or veil piercing claim.

■ In the commonly understood sense, piercing the corporate veil is generally used by a creditor of a corporation to ignore the limited liability of the corporate form and to hold the shareholders liable for the debts of the corporation. It is based on the theory that the corporation was a sham or the "alter ego" of the shareholder or perhaps of an officer or director. *Saidawi v. Giovanni's Little Place, Inc.*, 987 S.W.2d 501, 504–505 (Mo. Ct.App.1999); *Mass v. Bell Atlantic Tricon Leasing Corp. (In re Mass)*, 178 B.R. 626, 628–29 (M.D.Pa.1995). The creditor "pierces" the corporate veil or corporate form to place liability on the shareholders who, otherwise, would be shielded from liability by the corporate form. In a "reverse piercing" case, however, the shareholder attempts to have the corporate form of his own corporation disregarded for his own benefit. *See e.g., In re Elkay Industries, Inc.*, 167 B.R. 404, 410 (D.S.C. 1994) (allowing shareholder-parent corporation to pierce the corporate veil of its wholly owned subsidiary corporation to recover the fraudulent transfer of assets to a third party).[6]

■ The present case, contrary to the Debtor's and Defendant's representations to the Court, does not present a case of reverse piercing. Rather, this case presents a unique variation on the traditional veil piercing scenario. The Debtor (a corporation) is seeking to use an alter ego theory to pierce its own corporate veil in order to take over a potential claim (against a third party) that belongs to the Debtor's shareholder. The question that the Court must answer, therefore, is whether a corporation has standing to bring an alter-ego claim against itself, and, if it does, can it bring such a claim for the purpose of taking over and asserting a

6. *See also, Mass v. Bell Atlantic Tricon Leasing Corp. (In re Mass)*, 178 B.R. 626 (M.D.Pa. 1995) (holding that Chapter 7 trustee of debtor-corporation could "reverse pierce" the veil of the corporation's wholly owned subsidiary to bring additional assets into the bankruptcy estate); *Halverson v. Schuster (In re Schuster)*, 132 B.R. 604 (Bankr.D.Minn.1991) (in order to increase assets available for creditors claims, the court allowed Chapter 7 trustee to reverse-pierce veil of corporation of which debtor was 50% shareholder).

For a general discussion of the theory and application of the reverse veil piercing remedy *see*, David M. Grimes, *Reverse Piercing of the Corporate Veil*, 5 BANKR. STRATEGIST 1 (1996); Gregory S. Crespi, *The Reverse Pierce Doctrine: Applying Appropriate Standards*, 16 J.CROP.L. 33 (1991); Michael J. Gaertner, *Reverse Piercing the Corporate Veil: Should Corporation Owners Have it Both Ways?*, 30 WM. & MARY L.REV. 667 (1989).

claim that belongs to the shareholder. In terms of the present case, the issue is whether the Debtor can use the alter ego theory to assert a cause of action that belongs to its parent and sole shareholder, Mar–Kay Enterprises, against a third party, Reid Delaware.

■ The question of standing can be rephrased as whether a cause of action *belongs* to a particular party. In the bankruptcy context, it is axiomatic that causes of action belonging to the debtor at the commencement of the case are property of the estate. *Mixon v. Anderson (In re Ozark Restaurant Equipment Co., Inc.),* 816 F.2d 1222, 1225 (8th Cir.1987). Section 541(a)(1) of the Bankruptcy Code ("Code") provides that the bankruptcy estate is comprised of all legal and equitable interests of the debtor at the commencement of the case. This would include any cause of action which the debtor might have against others. *In re Western World Funding, Inc.,* 52 B.R. 743, 783 (Bankr. Nev.1985); 4 COLLIER ON BANKRUPTCY ¶ 541.08, at 541–41 (15th Ed. rev.1999).

■ Whether a cause of action "belongs" to a debtor corporation is determined by state law. *Ozark Restaurant,* 816 F.2d at 1225; *Tsai v. Buildings by Jamie, Inc. (In re Buildings by Jamie, Inc.),* 230 B.R. 36, 41 (Bankr.N.J.1998). In this case, the applicable state law is the law of Missouri, inasmuch as this case was filed in Missouri, the Debtor is a Missouri corporation, as is Mar–Kay Enterprises, Inc., and neither party has suggested differently.

■ The general rule is that alter ego claims belong to third parties and that the corporate veil should never be pierced for the benefit of the corporation or its stockholders. 18 AM.JUR.2D *Corporations* § 46, p. 846 (1985); *In re Rehabilitation of Centaur Ins. Co.,* 158 Ill.2d 166, 198 Ill.Dec. 404, 632 N.E.2d 1015, 1018 (1994) ("The alter ego doctrine was developed for and

has been traditionally used by third persons injured due to their reliance on the existence of a distinct corporate entity ... The corporate form may be disregarded only where equity requires the action to assist a third party.") (quoting 1 W. FLETCHER, PRIVATE CORPORATIONS § 41.10, at 615 (perm. ed. rev.vol.1990)) (internal quotation marks omitted). Thus, according to the general rule, a trustee would not have standing to pursue an alter-ego claim against a shareholder *or* a third party.

■ There is a dearth of Missouri law on either the issue of "reverse piercing" or alter-ego claims brought by a trustee, but what law there is suggests that Missouri follows the general rule. In *Osler v. Joplin Life Ins. Co.,* 164 S.W.2d 295 (Mo. 1942), the Missouri Supreme Court quoted with approval from 18 C.J.S. Corporations, §§ 6, 7, pp. 376–385 (1990):

> The rule followed in many cases is that the legal fiction of distinct corporate existence may be disregarded where a corporation is so organized and controlled, and its affairs are so conducted, as to make it merely an instrumentality or adjunct of another corporation. The courts will ignore separate corporate entities in order to defeat a fraud, wrong, or injustice, *at least where the rights of third persons are concerned.*

*Osler v. Joplin Life Ins. Co.,* 164 S.W.2d at 298 (emphasis added).

This language has been interpreted to stand for the proposition that only a third party has standing to pursue alter-ego claims and that a corporation or trustee on behalf of a debtor-corporation would not have standing to bring such a claim.[7] In *Mann v. Michael Industries, Inc. (In re Inland Shoe Manufacturing Company, Inc.),* 90 B.R. 981 (Bankr.E.D.Mo.1988), the Bankruptcy Court of the Eastern District of Missouri, relying on *Osler* and *Ozark Restaurant,* held that a Chapter 7 trustee did not have standing to bring an

---

7. *See also, In re Ozark Restaurant Equip. Co.,* 816 F.2d at 1225 (interpreting similarly worded Arkansas case-law as precluding alter ego claims by any one other than third parties).

alter ego suit against a third party on behalf of the debtor corporation, because under Missouri law the obligations and liabilities of an action to pierce the corporate veil do not run to the corporation or its stockholders generally, but to third parties.

> Where ... applicable state law makes such obligations or liabilities run to the corporate creditors personally, rather than to the corporation, such rights of action are not assets of the estate under Section 541(a) that are enforceable by the trustee under Section 704(1) ... In this respect, we recognize that generally, the corporate veil is never pierced for the benefit of the corporation or its stockholders.

*Inland Shoe,* 90 B.R. at 985 (quoting *Ozark Restaurant,* 816 F.2d at 1225).[8]

In the Debtor's Surreply, the Debtor relies heavily on *Block v. Warehouse Consultants, Inc., (In re Americana Services Inc.),* 173 B.R. 650 (Bankr.W.D.Mo.1994), for the premise that a bankruptcy trustee may maintain an alter-ego action on behalf of a debtor corporation. Concededly, the court in *In re Americana* ("*Americana*") did distinguish the case before it from the *Ozark Restaurant* case and held that a trustee could pursue an alter-ego claim on behalf of a debtor corporation. However, *Americana* is completely inapposite to the present case. In *Americana,* the court held that a trustee had standing to pursue an alter ego claim *against the shareholders* of a debtor-corporation to recover *specific assets* of the corporation which had been fraudulently conveyed to the shareholders themselves and to other of their wholly owned companies. This case presents an entirely different situation.

First, the Debtor has not brought an action against a shareholder; it has brought an action against a third party,

Reid Plastics, Inc. Second, the Debtor has not claimed that its shareholder, Mar–Kay Enterprises, Inc., used the corporate form to perpetrate a fraud. Rather, the Debtor wants the Court to pierce the corporate veil simply because it is no longer expedient for Mar–Kay Plastics, Inc., and Mar–Kay Enterprises, Inc., to maintain separate identities. And finally, the Debtor never had any interest in the property, i.e. the $100,000.00, or a cause of action against Reid Plastics, Inc., it now seeks to recover; the Debtor is pursuing a specific asset, but this asset has never belonged to the Debtor and therefore cannot be "recovered" in the true sense of the word.

Furthermore, the reasoning used by the court in *Americana* is inapplicable to the situation at hand. The court in *Americana* cited two rationales for allowing the trustee to pursue alter-ego claims to recover specific property transferred from the Debtor to the shareholders. First, it stated that because the "assets of a debtor passed through alter ego companies, [they] did not truly leave the control of the debtor and are property of the estate subject to turnover," *Id.* at 653 (citing *In re Robbins,* 83 B.R. 688, 693 (Bankr.W.D.Mo. 1988) *aff'd Evans v. Robbins,* 897 F.2d 966 (8th Cir.1990)). Second, the court opined that "property fraudulently transferred to a party with knowledge of the irregularity of the transfer remains liable to the extent of the value of the assets transferred." *Id.* at 653 (citing *South Side National Bank v. Winfield Fin. Serv.,* 783 S.W.2d 140, 143 (Mo.Ct.App.1989); *Swallows v. Holden,* 812 S.W.2d 552, 555 (Mo.Ct.App.1991)). Because the Debtor is not seeking to recover its own asset, but rather an "asset" of its shareholder—the claim against Reid Plastics, Inc.,—both of these rationales are clearly inapplicable.

The Debtor further argues that, even if the alter ego analysis is not applicable, the

---

8. *See also, Edward D. Gevers Heating and Air Conditioning Co. v. R. Webbe Corp.,* 885 S.W.2d 771, 773–74 (Mo.Ct.App.1994) "Implicit in [the] test for piercing the corporate veil is the requirement that the wrong done be

the proximate cause of injury *to third persons* who dealt with the corporation." (emphasis added) citing *Dave Kolb Grading, Inc. v. Lieberman Corp.,* 837 S.W.2d 924 (Mo.Ct.App. 1992).

Debtor nevertheless had a direct interest in the escrowed funds because the Debtor entered into agreements with the Defendant and the Defendant made additional promises regarding the use of the escrow money. This argument is not supported by the Complaint and the exhibits attached thereto. On the contrary, the exhibits clearly establish that the Letter of Intent and the Escrow Agreement were entered into by Mar–Kay Enterprises, Inc., and Reid Plastics, Inc. (then a California corporation), and that the Debtor was not a party to those agreements. The only way the Debtor obtains an interest in the fund is to pierce the corporate veil of Mar–Kay Enterprises for its own benefit, which it is not allowed to do under Missouri law.

In its legal memorandums, the Debtor also suggests that it had an interest in the escrowed money through its contingent right of equitable subrogation. The Debtor's argument seems to be circular. The Debtor argues that it has a direct interest in the escrowed money because of its right of equitable subrogation, and that it has a right of equitable subrogation because it has a direct interest in the money. The argument makes no sense.

 To use the doctrine of equitable subrogation, a claimant must satisfy a five-part test: (1) the claimant must have made payment to protect his own interests; (2) the claimant must not have been a volunteer; (3) the payment must satisfy a debt for which the claimant was not primarily liable; (4) the entire debt must have been paid; and (5) subrogation must not cause injustice to the rights of others. *In re Hagen,* 147 B.R. 166, 168 (Bankr. N.D.Iowa 1992). The Debtor cannot satisfy this test on several scores. For one, the Debtor did not use its funds to make payment to anyone, whether to protect its interests or another party's interests. The Debtor never had possession or control of the $100,000.00 earnest money deposit, and the Escrow Agreement makes clear that the Debtor did not have any claim to the escrowed funds. For another, the return of the earnest money to Reid California was not for payment of any debt owed by either Mar–Kay Enterprises or the Debtor. Certainly, it was not in payment for any debt for which the Debtor could have been found primarily liable. "The right of subrogation accrues to a person who has paid the debt or obligation for which another is primarily responsible." *Forrest T. Jones & Co., Inc. v. Ryan,* 812 S.W.2d 790, 794 (Mo.Ct.App.1991). *See also, In re Wrenn Insurance Agency of Missouri, Inc.,* 178 B.R. 792, 797 (Bankr.W.D.Mo. 1995).

Accordingly, the Court finds that the Debtor cannot, on these facts, establish a claim to the escrowed funds under the doctrine of equitable subrogation.

 For essentially the same reasons, the Debtor cannot establish a claim on the theory of economic duress (Count V). To successfully assert this claim, the Debtor would have to establish that financial distress was caused by a wrongful threat, 25 AM.JUR.2D § 6, p. 516 (1996), and this the Debtor cannot do except through the alter ego theory, which the Court has already determined is not available under these facts. The Debtor did not own the $100,-000.00 in the escrow account, so it lost nothing of value and none of its property when the money was returned to Reid California. Furthermore, even assuming for the sake of argument that the Debtor had a contractual relationship with Reid California, it is well settled that "a mere refusal to carry out a contract, even an established and proven one, does not of itself constitute coercion or duress ..." *Bennett v. Mahon,* 180 F.2d 224, 231 (8th Cir.1950). It is quite possible that Reid California's refusal to continue the purchase negotiations caused economic hardship for the Debtor, as alleged, but that does not rise to the level of economic duress under these facts.

 Finally, the claim based on a theory of promissory estoppel (Count IV) cannot stand because it, too, is dependent on

**484**

the Debtor's standing to assert an alter ego claim on behalf of the corporation. The Debtor must stand in the shoes of Mar–Kay Enterprises, Inc., to assert the promissory estoppel claim, and this it cannot do under Missouri law. Furthermore, even assuming for the moment that the Debtor could use an alter ego theory to assert a cause of action belonging to its shareholder, Mar–Kay Enterprises, Inc., the Letter of Intent was nothing more than a contract to make a contract, and promissory estoppel does not lie in that case. *Prenger v. Baumhoer,* 939 S.W.2d 23, 26 (Mo.Ct.App.1997).

## CONCLUSION

A motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted. *Jacksonville Newspaper Printing Pressmen and Assistants' Union No. 57 v. Florida Publishing Co.,* 340 F.Supp. 993, 995 (M.D.Fla.1972), *aff'd* 468 F.2d 824, *cert. denied* 411 U.S. 906, 93 S.Ct. 1531, 36 L.Ed.2d 196 (1973). Under Rule 12(b)(6), a court must review a complaint most favorably to the non-moving party and may dismiss the complaint only "if it appears that no relief can be granted under any set of facts that could be proved *consistent with the allegations.*" *Alexander v. Peffer,* 993 F.2d 1348, 1349 (8th Cir.1993) (emphasis added) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)).

Upon consideration of the Plaintiff's Complaint in a light most favorable to the Plaintiff, and taking as true all of the facts pleaded by the Plaintiff, the Court is convinced that the Plaintiff cannot, consistent with its allegations, prove any set of facts that would entitle it to relief. The Plaintiff's entire cause of action depends on the Plaintiff's standing to assert an alter ego claim on behalf of Mar–Kay Plastics, Inc., in order to pursue a cause of action belonging to its sole shareholder, against a third party. This the Plaintiff cannot do under Missouri law, and accordingly, the Court finds that, in the present circumstances, dismissal for failure to state a claim is appropriate. It is therefore

**ORDERED** that the Complaint filed by the Debtor, Mar–Kay Plastics, Inc., on January 15, 1999, against Reid Plastics, Inc., is hereby **DISMISSED** pursuant to Federal Rule of Bankruptcy Procedure 7012 and Federal Rule of Civil Procedure 12(b)(6).

The Clerk shall enter judgment in accordance herewith.

**SO ORDERED.**