**Opinion issued April 25, 2019**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-18-00002-CV

————————————

## SHAKEEL UDDIN, Appellant

## V.

## JACQUELINE K. CUNNINGHAM, DEPUTY RECEIVER OF SOUTHERN TITLE INSURANCE CORPORATION. AND SOUTHERN TITLE INSURANCE CORPORATION, Appellee

---

### On Appeal from the 334th District Court
### Harris County, Texas
### Trial Court Case No. 2012-29600

---

## MEMORANDUM OPINION

Appellant Shakeel Uddin guaranteed a loan made by Sterling Bank to Nabeel & Amaan Investments, Inc. NAI used the loan to purchase real property. Following NAI's loan default and a superior lienholder's foreclosure on the property, Sterling filed a claim under the title-insurance policy it received from Appellee Southern

Title Insurance Company. STIC, as Sterling's subrogee, sued Uddin as guarantor of the loan. After paying on Sterling's insurance claim and being assigned the rights under the loan, STIC amended its petition against Uddin, abandoning its subrogation action and asserting a direct claim on the guaranty. STIC successfully moved for summary judgment over Uddin's arguments that the statute of limitations deprived STIC of standing or capacity, STIC failed to prove each element of its claim, and he had raised material issues of fact on his affirmative defenses. Uddin now appeals, raising the same arguments. We conclude that the statute of limitations did not implicate STIC's standing, any defect in STIC's capacity was cured by the relation-back doctrine, STIC established each element of its claim, and Uddin contractually waived his right to assert his other affirmative defenses. We therefore affirm.

## Background

Nabeel & Amaan Investments, Inc. obtained a $1,400,000 loan from Sterling Bank on January 10, 2008, to finance its purchase of real property located at 9112 North Broadway, Houston. By the terms of the Promissory Note, NAI had five years to pay off the loan and granted Sterling a first lien on the property. That same day, NAI's president, Appellant Shakeel Uddin, signed a Guaranty Agreement, promising Sterling that he would be responsible for NAI's obligations under the Note if NAI defaulted.

2

Appellee Southern Title Insurance Company, a Virginia corporation authorized to do business in Texas, issued an Owner's Policy to NAI and a Lender's Policy to Sterling.[1] Under the Owner's Policy, STIC insured NAI against loss caused by any lien on the sold property. Under the Lender's Policy, STIC insured Sterling against loss caused by any lien on the property that was superior to Sterling's lien. Unknown to STIC and Sterling, a superior lien existed: JLE Investors, Inc. possessed an unpaid Deed of Trust on the property that predated Sterling's lien.

Following NAI's failure to make several payments on the Note, Sterling sent a letter to NAI and Uddin on February 10, 2011, demanding full payment on the Note and the Guaranty Agreement. Neither NAI nor Uddin paid. Twelve days later, Sterling accelerated the Note. Sometime within the following month, Sterling discovered that JLE's lien was superior to its own and notified STIC. Because JLE's lien was never paid off, JLE foreclosed on the property in October 2011. The property was later sold during a trustee's sale. By this time, STIC was in serious financial trouble.

---

[1] STIC issued these policies through one of its issuing agencies, American National Title. ANT's director was Uddin's business partner and fifty-percent co-owner of NAI, Syed Rizwan Mohiuddin. STIC filed a complaint in an adversary proceeding against Mohiuddin in United States Bankruptcy Court, seeking a determination that Mohiuddin was liable to STIC for his fraudulent issuance of eight title polices—including the two involved with this case. STIC was ultimately awarded a $8,497,832.62 nondischargeable judgment against Mohiuddin.

The State Corporation Commission of Virginia filed an application with the Circuit Court of the City of Richmond, seeking its appointment as STIC's receiver. In December 2011, the Virginia circuit court found that STIC was "in a hazardous financial condition such that any further transaction of its business will be hazardous to its insureds, policyholders, creditors, and the public." Accordingly, the Commission was appointed as STIC's receiver and was authorized "to proceed with the rehabilitation or liquidation of [STIC] and to take whatever steps . . . reasonably necessary . . . for the protection of [STIC's] insureds, policyholders, creditors, or the public."

On May 21, 2012, through its Virginia-appointed receiver, STIC sued Uddin in Harris County District Court. STIC, being subrogated to Sterling's rights against third parties by the Lender's Policy's terms, sought payment from Uddin for the damages it would incur from its having to pay Sterling under the policy. After Sterling formally filed its claim with STIC under the Lender's Policy in September 2012, the trial court granted an agreed plea in abatement that removed the case from the trial court's docket until Sterling's claim against STIC was "settled or resolved such that the exact amount of damages sought by [STIC could] be confirmed." Sterling eventually received $710,000 from STIC on its Lender's Policy claim.

Through a series of assignments that concluded in June 2016, Sterling's rights under the Note were assigned to STIC. And on August 30, 2016, STIC filed an

4

amended petition against Uddin, abandoning its subrogation action and seeking full recovery under the terms of the Guaranty Agreement. During the nearly two years of litigation that followed, STIC unsuccessfully moved for summary judgment numerous times, and Uddin repeatedly asserted a number of defenses, including the statute of limitations and offsets.

In STIC's final attempt at summary judgment, it argued, among other things, that under Paragraph 11 of the Guaranty Agreement, Uddin waived all defenses, including his statute-of-limitations and offset defenses. STIC also contended that, even if Uddin did not waive the statute-of-limitations defense, its claim under the Note was still timely. The trial court granted STIC's motion and ultimately signed a judgment requiring Uddin to pay $1,656,269.28, which consisted of the Note's remaining principal balance, interest, and various fees. Uddin unsuccessfully moved for a new trial and now appeals.

## Analysis

Uddin contends that the trial court improperly granted summary judgment because the statute of limitations deprived it of subject-matter jurisdiction; STIC did not cure its lack of capacity until after the statute of limitations lapsed; STIC failed to prove each breach-of-contract element; and Uddin raised fact issues on his other affirmative defenses.

5

## I. Statute of limitations and its effect on STIC's capacity

Uddin contends that the trial court erred by granting summary judgment for STIC because he raised a fact issue concerning his statute-of-limitations defense. We review a trial court's rendition of summary judgment de novo, interpreting all summary-judgment evidence and making all reasonable inferences in favor of the nonmovant. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 756–57 (Tex. 2007). To prevail on summary judgment, the movant must demonstrate that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Tarr v. Timberwood Park Owners Ass'n*, 556 S.W.3d 274, 278 (Tex. 2018). Once the movant makes this showing, the burden shifts to the nonmovant to show that there exists a genuine issue of material fact sufficient to preclude summary judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). A genuine issue of fact exists when reasonable and fair-minded jurors could differ in their conclusions in light of all summary-judgment evidence. *Goodyear Tire*, 236 S.W.3d at 755.

The statute of limitations for a breach-of-contract action is four years from the date of accrual. TEX. CIV. PRAC. & REM. CODE § 16.004(a)(3). A breach-of-contract claim accrues when, according to the language of the agreement, facts that authorize the claimant to seek a judicial remedy come into existence. *See Exxon Mobil Corp.*

*v. Rincones*, 520 S.W.3d 572, 591 (Tex. 2017). Whether and when accrual occurs is a question of law. *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990).

The Guaranty Agreement provides, "In each event whenever any of the Obligations shall become due and remain unpaid . . . Guarantor will, on demand, pay the amount due thereon to Lender . . . ." On February 10, 2011, Sterling demanded payment of all past-due amounts no later than February 22, 2011. Uddin failed to make that payment, and Sterling accelerated the Note on February 22, 2011. Accordingly, Sterling's breach-of-contract claim accrued in February 2011, meaning the statute of limitations expired in February 2015.

An assignee "takes the assigned rights subject to all defenses which the opposing party might be able to assert against his assignor." *Burns v. Bishop*, 48 S.W.3d 459, 466 (Tex. App.—Houston [14th Dist.] 2001, no pet.). Therefore, a claim otherwise barred by the applicable statute of limitations cannot be made viable by assignment. Uddin stresses that, by February 2015, STIC had not been assigned the rights under the Guaranty Agreement and that Sterling first sued on the Guaranty Agreement in August 2016, well after the statute of limitations expired in February 2015. It follows, Uddin contends, that "[b]y the time STIC acquired Sterling's claim on the Guaranty Agreement through assignment in June 2016, limitations had already expired, and the claim was barred."

In its motion for summary judgment and its reply to Uddin's motion for new trial, STIC argued that, under the Guaranty Agreement, Uddin waived all defenses, including his statute-of-limitations defense. Paragraph 11 of the Guaranty Agreement provides:

> Guarantor waives . . . all defenses given to sureties or guarantors at law or in equity other than actual payment of the indebtedness and performance of the actions constituting the Obligations, including, but not limited to, any rights pursuant to Rule 31 of the Texas Rules of Civil Procedure, Sections 51.003 – 51.005 of the Texas Property Code, and Chapter 34 of the Texas Business and Commerce Code.

Uddin contends that this language unambiguously does not waive the limitations defense. He contends alternatively that even if the language did waive the limitations defense, it did so improperly because, in general, a contract that waives a statute-of-limitations defense without explicitly referencing the applicable statute of limitations and defining the length of time that the limitations defense is suspended is contrary to public policy and therefore void. *See Segal v. Emmes Capital, L.L.C.*, 155 S.W.3d 267, 280–81 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

STIC, on the other hand, contends that Paragraph 11 unambiguously waives the limitations defense and that Uddin cannot make his public-policy argument here because he failed to file a verified denial alleging that Paragraph 11 was void to the extent that it purports to waive the limitations defense. *See 950 Corbindale, L.P. v. Kotts Capital Holdings Ltd. P'ship*, 316 S.W.3d 191, 196 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("An allegation that a provision in a contract is void,

8

unenforceable, or unconscionable is a matter in the nature of avoidance and must be affirmatively pleaded." (citing TEX. R. CIV. P. 94)). We need not address this issue, however, because the relation-back doctrine obviates any potential limitation issue.

*Franks v. Sematech, Inc.*, 936 S.W.2d 959 (Tex. 1997) is instructive. After paying workers' compensation benefits to workers injured by the defendant, the insurance carrier filed suit against the third parties who allegedly caused the workers' injuries. *Id.* at 959. The carrier brought the subrogation action in its own name before the applicable two-year statute of limitations had expired. *Id.* After limitations expired, but while the suit was still pending, one of the injured workers intervened and asserted claims against the third-party defendants. *Id.* at 960. The trial court granted the third-party defendants' motion for summary judgment on the ground that the intervenor's claims were barred by limitations. *Id.* The court of appeals affirmed, but the supreme court reversed.

In holding that the intervenor's claim was not time barred, the supreme court explained that, even though the "carrier . . . assert[ed] its subrogation claim independently of the employee, . . . [its] claim [was] still derivative of the employee's claim." *Id.* "After limitations has run, a carrier who originally limited its demand to benefits paid could amend its pleadings to demand full recovery of all damages owed." *Id.* Accordingly, the court concluded, "There is no reason why the employee should not be able to accomplish the same result by intervening in the

9

subrogation action, even after limitations has run, to claim full recovery from the third party." *Id.* at 960–61.

We see no reason why the *Franks* rationale should not apply here. Relation back was permissible in *Franks* because the carrier's initial subrogation action was derivative of the claims of the workers injured by the defendants. *Id.* at 960. Similar to *Franks*, STIC's original petition was a subrogation action derivative of Sterling's claim against Uddin. Therefore, STIC's claims in its amended petition relate back to its original petition and are not barred by limitations. *See id.* at 961.

## II. Statute of limitations and its effect on STIC's standing

Uddin contends that the statute-of-limitations issue presents a standing problem, not a capacity problem curable by the relation-back doctrine. Standing is a component of a trial court's subject-matter jurisdiction. *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 445–46 (Tex. 1993). When a plaintiff lacks standing to bring a claim, the trial court is deprived of subject-matter jurisdiction and the case must be dismissed. *See id.* Because standing implicates a trial court's subject-matter jurisdiction, we typically address standing arguments first. *See BP America Prod. Co. v. Laddex, Ltd.*, 513 S.W.3d 476, 479 (Tex. 2017). But because Uddin's standing argument requires an understanding of the relation-back doctrine discussed above, we address Uddin's standing argument here.

According to Uddin, when STIC filed its original subrogation action on May 21, 2012, it lacked standing to sue on the Guaranty Agreement because it had not yet been assigned the rights under the Note. Uddin maintains that because standing cannot be waived nor cured by the relation-back doctrine, and because STIC was assigned Sterling's rights under the Note in June 2016—over a year after the statute of limitations expired—allowing STIC's August 30, 2016 amended petition to relate back to its original May 21, 2012 petition to cure its lack of standing was improper.

Uddin correctly states that standing cannot be waived nor cured by the relation-back doctrine. *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 164 (Tex. 2012); *Raytheon Co. v. Boccard USA Corp.*, 369 S.W.3d 626, 631 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). Nevertheless, we reject Uddin's argument because the four-year statute of limitations imposed on STIC's claims is not a jurisdictional requirement.

Limitations is generally classified as an affirmative defense and is not jurisdictional in nature. *In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 308 (Tex. 2010). Absent some contrary expression of legislative intent, courts should follow this general rule and not construe an applicable statute of limitations as imposing a jurisdictional requirement that the claim be timely filed. *See id.* (citing for example TEX. GOV'T CODE § 311.034 (providing that "statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against

11

a governmental entity")). Because nothing in section 16.004 of the Texas Civil Practice and Remedies Code or related statutes suggest a legislative intent to impose a jurisdictional requirement, we hold that subsection 16.004(a)(3)'s four-year limitations period is not jurisdictional. Rather, it presents an issue of capacity, and deficient capacity can be cured by the relation-back doctrine. *See, e.g.*, *Intracare Hosp. North v. Campbell*, 222 S.W.3d 790, 796–97 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845 (Tex. 2005)). Accordingly, we overrule Uddin's statute-of-limitations issues.

## III. Contractual waiver of Uddin's defenses

Uddin contends that summary judgment was nevertheless improper because he raised material issues of fact relating to his defense of offset, which was based on alleged misrepresentation, conversion, negligence, breach of contract, breach of fiduciary duty, Insurance Code and DTPA violations, unjust enrichment, and equitable estoppel. STIC counters by arguing that Uddin waived these offset defenses under Paragraph 11 in the Guarantee Agreement.

STIC is correct. "The right of offset is an affirmative defense." *Brown v. Am. Transfer & Storage Co.*, 601 S.W.2d 931, 936 (Tex. 1980). In Paragraph 11, Uddin waived "all defenses given to sureties or guarantors." Accordingly, Uddin waived his offset defense and its underlying theories.

We are not swayed from our conclusion by Uddin's argument that Paragraph 11 waived only those defenses that are exclusively available to guarantors and sureties. We give a contract's language the plain and ordinary meaning it deserves. *ConocoPhillips*, 547 S.W.3d at 837. Uddin reads the Paragraph 11 as stating, "Guarantor waives . . . all defenses given *only* to sureties or guarantors at law or in equity . . . ." But that is not what it says. Under the contract, Uddin waived "all defenses given to sureties or guarantors." That the offset defense is not a defense exclusive to sureties or guarantors does not change the fact that it is a defense "given to sureties or guarantors."

Further, that Paragraph 11 goes on to specifically describe certain defenses as being waived does not suggest, as Uddin contends, that the parties were limiting the waiver to those defenses available only to sureties or guarantors. For example, Paragraph 11 states explicitly that the waiver encompasses "any rights pursuant to . . . Sections 51.003 – 51.005 of the Texas Property Code." In rejecting a guarantor's argument that a waiver was insufficiently specific to waive section 51.003(a)'s two-year statute of limitations, our sister court held that a waiver stating that a "Guarantor also waives any and all rights or defenses arising by reason of . . . [any] 'anti-deficiency law'" was sufficiently specific to waive all defenses based on an anti-deficiency law, "includ[ing] a defense based on 51.003(a)'s two-year statute of limitations." *Godoy v. Wells Fargo Bank, N.A.*, 542 S.W.3d 50, 52–53 (Tex. App.—

13

Houston [14th Dist.] 2017, pet. granted). Accordingly, that Paragraph 11 specifically identified some defenses and not others is not conclusive proof that the parties intended to waive defenses available only to sureties and guarantors, as Uddin contends; rather, that fact simply confirms the party's intent, as expressed in Paragraph 16 of the Guaranty Agreement, to draft a contract that "compl[ied] with usury and all other laws relating to this Guaranty." Accordingly, we overrule Uddin's issues regarding his other affirmative defenses.

## IV. Conclusively establishing each element of breach of contract

Uddin contends that summary judgment was improperly granted because STIC failed to conclusively prove each element of its breach-of-contract claim. A plaintiff seeking to enforce a note must establish that the note exists, it is the owner or holder of the note, and "a certain balance is due and owing on the note." *Leavings v. Mills*, 175 S.W.3d 301, 308 (Tex. App.—Houston [1st Dist.] 2004, no pet.). Uddin argues that STIC offered no evidence establishing as a matter of law that $1,656,269.28 was the amount owed under the Guarantee Agreement.

STIC's summary-judgment evidence included the Note, Uddin's guaranty of the Note, the assignment of the Note to STIC, and a "payoff statement" that was part of Sterling's business records. Each document was described either by the affidavit of John Cox, a STIC receiver, or Mary Hensley, a records custodian for Sterling. To establish the amount owed under the Guaranty Agreement, STIC largely relied on

14

the "payoff statement" attached to Hensley's affidavit. Generally, a "payoff statement" is a "statement of the amount of . . . the unpaid balance of a loan secured by a mortgage, including principal, interest, and other charges properly assessed under the loan documentation of the mortgage . . . and . . . interest on a per diem basis for the unpaid balance." TEX. PROP. CODE § 12.017(a)(5).

The "payoff statement" provides that a principal balance of $1,082,525.55 was due and owing on September 15, 2016. It also lists as due and owing by that same date interest in the amount of $541,690.99, late fees in the amount of $10,075.41, and other fees in the amount of $21,977.33. It then lists the total "payoff" as $1,656,269.28, which is the cumulative amount of the principal balance, interest, and fees. The trial court's judgment ordered Uddin to pay STIC $1,656,269.28. Uddin contends, however, that there are numerous inconsistencies and unexplained numbers in this "payoff statement" that make it incapable of conclusively establishing the amount owed. We disagree.

Uddin contends that the payoff statement does not conclusively demonstrate that it describes the Note, pointing out that the payment statement reads, "GUARANTEE : NO," "ORG EFF DATE: [November 14, 2011.]," and "ORIG LN AMOUNT: 1,332,525.55. He maintains that because this lawsuit is based on the Note that he guaranteed for $1,400,000 and that was executed on January 10, 2008, these three discrepancies raise the reasonable possibility that the payoff statement

addresses some other loan. But Uddin swore in an affidavit that Sterling extended only one loan to NAI, and the payoff statement lists the loan as being provided to "NABELL AMAAN IN." Further, November 14, 2011 is the same date the trial court signed an order of nonsuit dismissing Sterling's claim against NAI for collection on the Note without prejudice. Further, the Note required NAI to pay off the entire loan balance within five years, and the payoff statement lists the "MAT DATE" as January 10, 2013, exactly five years after the Note was executed. Last, under the heading "PAYMENT INFO," the payoff statement lists "1,400,000" as the "PAYOFF AMOUNT." This amount conforms with the amount listed in the Note, the Guaranty Agreement, the Purchaser's and Seller's Statements, and Uddin's affidavit. The discrepancies that Uddin identifies in the payoff statement are negated by reference to the other summary-judgment evidence and therefore do not raise a genuine issue of material fact. The trial court properly determined that STIC conclusively established $1,656,269.28 as the amount due and owing under the Note. We therefore overrule Uddin's last issue.

**Conclusion**

The trial court's judgment is affirmed.


Richard Hightower
Justice

Panel consists of Justices Lloyd, Kelly, and Hightower.

16